# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| JULIAN C. LANE, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV414-092 |
| | ) | |
| S BANK, | ) | |
| | ) | |
| Defendant. | ) | |

# **ORDER**

Defendant S Bank moves to stay discovery in this Employee Retirement Income Security Act (ERISA) action pending resolution of their motion to dismiss Plaintiff Julian C. Lane, Jr.'s Second Amended Complaint. Doc. 52; *see also* doc. 51 (motion to dismiss). Lane opposes. Docs. 53 & 54.

## I. BACKGROUND[1]

Lane was employed as First Citizen Bank's (later S Bank) president. As part of the perks of the job, he was party to a "Salary Continuation Agreement" which provided for a deferred compensation

---

[1] The background is assembled from Lane's Complaint, which is taken as true at the dismissal stage. This does not reflect the Court's opinion as to the merits of the case, or the verity of any of these assertions.

retirement plan. In essence, when he hit retirement age he would retire with about $56,000 a year guaranteed for 15 years. But S Bank came under FDIC scrutiny and it sought to cut some of the fat. So, Lane signed a "Termination Agreement" forfeiting those "top hat" retirement benefits to make the flailing bank look more stable. In exchange, he was told by the other Board executives that he could continue working past retirement and thus earn a salary, compensating him for the sacrifice. A few months later, the Board forced him to retire, leaving him with neither a salary nor retirement benefits. *See* doc. 50.

This is not defendant's first attempt to terminate Lane's case. After removing it from Liberty County Superior Court in April 2014, S Bank filed a motion for judgment on the pleadings (doc. 8) and a motion to dismiss the First Amended Complaint (doc. 29). In an order denying plaintiff's renewed motion to remand (doc. 36), the Court deemed moot defendant's motion to dismiss and ordered plaintiff to amend his Complaint again to state claims under ERISA -- which fully preempt his state law claims of fraud in the inducement, promissory estoppel, fiduciary duty, and attorneys' fees. Doc. 49 at 4, 7-10. Lane amended, alleging four claims under ERISA. Doc. 50.

## II. ANALYSIS

Defendant moves to dismiss Lane's Second Amended Complaint on several grounds, including, *inter alia*, that 1) they improperly weave preempted state law claims into ERISA claims; 2) he failed to exhaust his administrative remedies; 3) he cannot rely on alleged oral representations to overcome the terms contained within the four corners of the Termination Agreement; 4) he lacks standing to challenge the retirement plan; and, regardless, 5) he knowingly and voluntarily waived any ERISA claims by signing the Termination Agreement. Doc. 51-1 at 8-14.

Plaintiff responds that 1) he doesn't plead state law claims; 2) there was no "denial of review" triggering any administrative review process and any attempt at administrative exhaustion would have been "unavailable" because the Plan Administrator could not have resurrected the benefits surrendered by the Termination Agreement; 3) defendant's "pure contract"/parole evidence rule argument that he cannot introduce oral representations to interpret the Termination Agreement is not the appropriate standard for evaluating this action; 4) he has standing as an individual; and, 5) any inquiry into the "knowing and voluntary" nature

of his ERISA waiver would be so fact-sensitive as to require discovery to investigate it.

As the issues really boil down to whether plaintiff can assert estoppel based on his reliance upon defendant's promises of continued employment, or if S Bank can argue waiver of ERISA claims, the Court will examine those two issues to determine whether a stay of discovery is appropriate.[2]

ERISA is a comprehensive statute designed to federalize the regulation of employee welfare benefit plans. However, the statute has interstices, and Congress anticipated that the federal courts would fill those gaps with "a federal common law of rights and obligations under ERISA-regulated plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987). In other words, ERISA's preemption of state law (including state common law) does not mean that all common law concepts are automatically inapplicable in the ERISA context. *Pilot*, 481 U.S. at 56; *accord Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989).

---

[2] "When a party seeks a stay pending resolution of a motion to dismiss, a court must take a preliminary peek at a dispositive motion to assess the likelihood that the motion will be granted." *Sams v. GA West Gate, LLC*, 2016 WL 3339764 at * 6 (S.D. Ga. June 10, 2016) (quotes and cites omitted).

4

And estoppel applies in the ERISA context "when the conduct of one party has induced the other party to take a position that would result in harm if the first party's acts were repudiated." *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994); *see also Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999) (plaintiffs must show: 1) a promise; 2) reliance on the promise; 3) injury caused by the reliance; and 4) an injustice if the promise is not enforced). "Detrimental reliance" on that inducement is required. *Glass*, 33 F.3d at 1347. For that, a plaintiff need only demonstrate "a promise that [defendant] reasonably should have expected to induce action or forbearance on [his] part." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 86 (2d Cir. 2001).

The Second Amended Complaint clearly explains that Lane was promised continued employment as bank president past his date of retirement if he signed off on the post-retirement benefits Termination Agreement. Doc. 50 at ¶¶ 12-14 (under FDIC examination, S Bank sought ways to strengthen its capital position, including eliminating that "top hat" deferred compensation retirement plan it had promised Lane). Had he not been so promised, he would not have given up those benefits.

*Id.* at ¶¶ 13-15 ("To recoup the funds he would have received under the deferred compensation plan, Mr. Lane would need to continue to work and earn a salary."); ¶ 29 ("Lane surrendered a very valuable asset, *i.e.* the benefits of his Salary Continuation Agreement, based on the Bank's affirmative assurances that his employment would be continued until such time as [he] chose to retire."); *see also id.* at ¶¶ 17-18 (before signing, Lane even consulted with the Bank's legal counsel and accounting team to try to get the promise in writing; they advised him "such a contractual modification would not have the desired effect of increasing the Bank's capital position" so it couldn't be memorialized, but they did modify his employment agreement to up his age of retirement).

S Bank got what it wanted (doc. 50 at ¶¶ 16 & 30 (its capital position survived FDIC scrutiny)), and Lane continued doing a superlative job (*id.* at ¶¶ 20-21). S Bank's Board terminated him anyway. *Id.* at ¶ 25. It also immediately hired another president -- at the same Board meeting, nonetheless -- who had in fact been contacted long before the Termination Agreement was proposed. *Id.* at ¶¶ 25-28, 31. And by repudiating its promise, defendant harmed Lane -- he lost his guaranteed

*Id.* at ¶¶ 13-15 ("To recoup the funds he would have received under the deferred compensation plan, Mr. Lane would need to continue to work and earn a salary."); ¶ 29 ("Lane surrendered a very valuable asset, *i.e.* the benefits of his Salary Continuation Agreement, based on the Bank's affirmative assurances that his employment would be continued until such time as [he] chose to retire."); *see also id.* at ¶¶ 17-18 (before signing, Lane even consulted with the Bank's legal counsel and accounting team to try to get the promise in writing; they advised him "such a contractual modification would not have the desired effect of increasing the Bank's capital position" so it couldn't be memorialized, but they did modify his employment agreement to up his age of retirement).

S Bank got what it wanted (doc. 50 at ¶¶ 16 & 30 (its capital position survived FDIC scrutiny)), and Lane continued doing a superlative job (*id.* at ¶¶ 20-21). S Bank's Board terminated him anyway. *Id.* at ¶ 25. It also immediately hired another president -- at the same Board meeting, nonetheless -- who had in fact been contacted long before the Termination Agreement was proposed. *Id.* at ¶¶ 25-28, 31. And by repudiating its promise, defendant harmed Lane -- he lost his guaranteed

15 years of annual compensation post-retirement and his job, despite being told it too was being guaranteed. *Id.* at ¶¶ 29, 32-33. These factual allegations appear to be enough (at this stage) to support plaintiff's claim for equitable estoppel, and discovery should go forward to substantiate or repudiate it.

"Waiver," a distinct claim from estoppel, is the "voluntary, intentional relinquishment of a known right" and, while it does not necessarily require reliance, it does require demonstration of some type of bargained-for consideration. *Glass*, 33 F.3d at 1347-48. Waiver is evaluated by the "totality of the circumstances," including:

> . . . the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

*Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir. 2007), cited in *In re Suntrust Banks, Inc. ERISA Litig.*, 2016 WL 4377131 at *3 (N.D. Ga. Aug. 17, 2016) (extending the "knowing and voluntary" "totality of the circumstances" analysis to ERISA litigation).

Here, defendant convincingly argues that as a bank president, Lane

had the "education and business experience" to read and understand the Termination Agreement, including the relevant language that there is "no guarantee of continued employment" and that the contract itself contained the "entire" agreement between the parties. Doc. 51-1 at 11; *see* doc. 51-3 at 2-4 (Termination Agreement). He apparently also had adequate time to consider it and was encouraged but not coerced to sign it. *See generally* doc. 50 (no allegations of coercion or lack of time to consider his options).

But the Court finds it dispositive that he consulted with an attorney -- the Bank's *own counsel* -- to request that the oral promise made for continued employment would be set down in writing. Doc. 50 at ¶¶ 17-18 (before signing, Lane consulted with the Bank's legal counsel and accounting team to try to modify his employment contract and get that promise in writing; they advised him "such a contractual modification would not have the desired effect of increasing the Bank's capital position" so it couldn't be memorialized, but they did modify his employment agreement to bump up his age of retirement as a sort of compromise). He wanted that promise in writing because the Termination Agreement itself was *not* the "entire" agreement. But

defendant's legal counsel told him it would unwind the very purpose of the Termination Agreement, which was tricking the FDIC into believing S Bank was in a better capital position. *Id.* Counsel's advice and plea on behalf of the bank to forgo a "continued employment" modification and accept an extended retirement age addendum instead also potentially explains why Lane would then sign an agreement forfeiting such valuable "top hat" benefits without *any* consideration in exchange.[3]

The Court is unconvinced that Lane truly "knowingly and voluntarily" waived his ERISA rights. It is further unconvinced that it is limited to looking only within the four corners of the Termination Agreement and barred from considering the representations made by the S Bank Board (and counsel) to induce Lane to sign away his benefits. In other words, something is going to survive dismissal (even if ordered to be amended and repleaded) to trudge on towards summary judgment. A

---

[3] As an aside, the Court questions whether such counsel was then operating under a conflict of interest. *See Herron v. Chisolm*, 2012 WL 6645643 at * 4-5 (S.D. Ga. 2012); *Sapienza v. New York News, Inc.*, 481 F. Supp. 676, 680 (S.D.N.Y. 1979) (despite client consent, multiple representation is improper where it was not "obvious" that attorney could adequately represent the interests of each client); *cf.*, *Klemm v. Superior Court*, 75 Cal. App. 3d 893, 898 (5th Dist. 1977) ("As a matter of law a purported consent to dual representation of litigants with adverse interests at a contested hearing would be neither intelligent nor informed.").

stay of discovery is thus unwarranted. Discovery must *commence*[4] while witnesses' minds are still (at least somewhat) fresh and documents are still readily accessible. This case is aging rapidly (it was, after all, filed in state superior court in April 2014 -- more than three years ago) and the parties need to move it along.

Accordingly, defendant's motion to stay discovery pending resolution of the motion to dismiss (doc. 52) is **DENIED**. The parties are further **ORDERED** to meet and confer and submit a proposed scheduling order within 21 days of service of this Order.[5]

**SO ORDERED,** this  17th  day of July, 2017.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[4] The Court is mindful that the parties have not yet held a Fed. R. Civ. P. 26(f) conference or exchanged initial disclosures. Discovery was stayed back in June 2014 (doc. 18) and has simply never restarted. *See* doc. 54 at 2 ("Throughout these various motions and proceedings, no discovery has been exchanged, and no witness deposed. . . . [Plaintiff] requests that the parties begin to conduct initial discovery, which would include an exchange of written discovery and pertinent documents, and identification of witnesses.").

[5] The parties may confer about whether plaintiff's proposed tiered discovery schedule is palatable to both sides.